(27 App. Div. 137.)

FERNALD et al. v. PROVIDENCE–WASHINGTON INS. CO.

(Supreme Court, Appellate Division, First Department. March 25, 1898.)

1. INSURANCE—LIABILITY POLICY—CONSTRUCTION.
     A liability policy of insurance, issued to plaintiffs, the owners of a tug, provided that the company should not be liable unless the liability of the tug should be determined, by a suit at law or otherwise, as the company should elect. The tug was libeled by parties claiming damages for injuries to a schooner while in tow of the tug, and at the company's request the plaintiffs defended the suit, and, after the tug had been sold under the decree, brought action on the policy to recover the amount for which it was sold, together with counsel fees and disbursements attending the trial. *Held*, that the determination of liability, as agreed, was a condition precedent to a recovery, and that the request of the company to plaintiffs was a mere election to adopt that method of determination, leaving upon plaintiffs the necessity of defending at their own expense.

2. SAME.
     The policy provided that "in all cases of loss $200 shall be deducted." *Held*, that this provision applied, not alone to the first loss paid, but to each and every loss payable under the policy.

Appeal from trial term, Kings county.

Action by George H. Fernald and Solomon A. Thomas, administrators of Solomon Thomas, deceased, against the Providence-Wash-

ington Insurance Company. From the judgment, and from an order denying a new trial, both parties appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Nelson Zabriskie, for plaintiffs.
Laroy S. Gove, for defendant.

VAN BRUNT, P. J. This action is brought upon a liability policy of insurance issued by the defendant on January 20, 1893, upon the steam tug Unit, and running for one year from January 30, 1893.

On the 19th of June, 1893, the tug had in tow alongside the schooner Isle of Pines, and, when she had reached a point in the East river between Blackwell's Island and the New York shore, a collision occurred between an excursion barge, in tow of the steam tug Titan, and the steamboat Thomas Hunt and the schooner Isle of Pines, in tow of the tug Unit, by reason of which the schooner Isle of Pines was sunk, with a cargo in her valued at over $6,000.

A libel was filed in the district court of the United States for the Southern district of New York, by the owners of the schooner, and the tug Unit was seized by the marshal under process of said court. The plaintiffs defended the suit in the district court at the request of the defendant, and filed a stipulation for costs in the amount of $250. The court held all three vessels liable for the damages resulting from the collision. An interlocutory judgment, fixing the liability, but not the amount of the damage, was entered on the 21st of June, 1894, after a trial upon the merits in said court. The final decree was entered on the 7th of November, 1895. There were also libels filed against the Unit in the district court for supplies furnished to the tug, for wages, and for coal. The tug was sold for $400. The marshal's fees upon the seizure and sale were taxed at $188.40, which sum was paid to the marshal out of the proceeds of the sale, leaving a balance of $211.60; and against this sum two items were subsequently taxed, amounting to $6.30, leaving a net balance of $205.30, which was paid on account to the claimants under the libels for wages and supplies.

In January, 1894, the libelants, who had filed the libel in the rem suit, filed another libel in a personam suit against the plaintiffs herein, based upon the same facts as set forth in the libel in rem, and sought to recover in said personam action against these plaintiffs the sum of over $6,000. Issues were joined in this last-named action but it does not appear ever to have been brought to trial.

In the present action the plaintiffs sought to recover $906.75, being the $400 for which the steam tug Unit was sold, $250 the amount of the stipulation for costs, $150 counsel fees, and $106.75 for disbursements attending the trial. The court directed a verdict for $379.69, and from the judgment thereupon entered, and from an order denying motion for new trial, both parties appeal to this court.

The policy upon which this action was brought provides substantially as follows:

"Providence-Washington Insurance Co., by its policy of insurance, do make insurance and cause S. Thomas and George H. Fernald, on account of the in-

sured, loss, if any, payable to them, to be insured in the sum of three thousand dollars ($3,000) at and from at noon, on the 30th day of January, 1893, warranted by the insured to be then in safety, until at noon on the 30th day of January, 1894, * * * against such loss or damage as the steam tug Unit may become legally liable for from any accident caused by collision or stranding as above stated. Touching the adventures and perils which the said insurance company is content to bear and take upon themselves by this policy, this insurance is to fully indemnify the assured for loss and damage arising from or growing out of any accident, caused by collision or stranding, resulting from any cause whatever, to any other vessel or vessels, their freights and cargoes (or each or any of them), for which said steamer or its owners may be legally liable. * * * Should any loss or damage happen during the period insured as aforesaid, this company shall not be liable unless the liability of the said steamer for such loss or damage is determined by a suit at law or otherwise, as this company may elect."

The policy also contained the following clause:

"It shall be lawful and necessary to and for the assured, their agents, factors, servants, and assigns, to sue, labor, and travel for, and to make all reasonable exertions in and about the defense, safeguard, and recovery of the said vessels and cargoes, or any part thereof, without prejudice to this insurance."

Another clause provides that the loss shall be payable in 60 days after proofs of such loss or damage and the amount thereof shall be made, and in all cases of loss $200 shall be deducted therefrom. Another clause also provides that all claims paid under said policy of insurance shall reduce the liability under the policy to the extent of the sums paid.

It is claimed by the defendant that it was not liable for counsel fees or any charges incurred by plaintiffs in the defense of the suit of the owners of the Isle of Pines against the Unit under the terms of the policy; that it was a condition precedent that the plaintiffs should cause the liability of the tug for the loss to be determined, in a suit at law or otherwise, as the company might elect; and that this was a burden the tug accepted under the policy, and until the tug had done that she had no claim. This position we think to be well taken. The insurance was against the legal liability, and the policy provided that the company should not make good any loss unless the liability for such loss or damage was determined, by a suit at law or otherwise, as the company might elect. The company had a right to say, under the terms of the policy, that the suit should be defended, and the liability determined by a suit at law.

It is claimed that the liability would be determined by a suit at law if the suit was brought and not defended. But it is clear that that was not the intention of this clause in the policy. In order that there may be a determination of a controversy, two sides must be presented, and therefore, when the policy provides that the liability must be determined in a suit at law, it means with all the concomitants embraced within such a method of procedure. It is to be observed that the company had an election, and, when it was applied to to make such election, it did so, and said: "Defend, and determine the liability by a suit at law." This was the method in which proofs of loss were to be presented, and, such being the contract, the company was not liable for the expenses to which the assured was put in preparing his proofs of loss in accordance with the terms of the policy. As well

might it be said, in the case of a standard policy of fire insurance, when proceedings are taken under the arbitration clause to ascertain the amount of damages, the insurance company, in case it is held liable for the loss, could be compelled to pay the expenses incurred by the assured in the arbitration. .

The decree being a necessary part of the proofs of loss, the assured was bound to defend the suit and establish the liability of the company at his own expense. There could not, therefore, under any circumstances, be a liability greater than $400. But we think that, in view of the application of the $400 to the payment of the debts of the owners of the tug, they have not been damaged even to the full extent of that sum. They were relieved of personal obligations by the application of a portion of the proceeds of the sale of the tug to the payment of sums for which they were personally liable, for supplies furnished to the tug and the wages of its crew. Clearly, so far as the proceeds of sale have been applied to the payment of these personal obligations of the owners, they have no claim against the defendant insurance company.

It seems to us to be equally clear that the defendant was entitled to a further deduction of the sum of $200, the particular average provided for in the policy. It is urged that this deduction should not be made in this case, because it had already been made in the case of a previous loss, to which this policy attached. But the language of the policy precludes any such construction. It is: "And in all cases of loss $200 shall be deducted therefrom." Not in case of loss, but in all cases of loss. This would seem to refer to divers and various losses under this policy, and in each case from the loss is to be deducted the sum of $200.

We have endeavored to ascertain upon what theory the court directed the verdict in the sum of $379.69, but have been unable to reach the same result by any combination of figures which have suggested themselves; and the learned counsel for the appellants and respondent have not aided us in any respect by attempting to explain the theory upon which such direction is made. We are of opinion that the direction was wrong, and that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to appellant to abide event.

BARRETT and O'BRIEN, JJ., concur.

RUMSEY, J.    I concur in the reversal of this judgment. But I cannot agree with so much of the opinion as holds that the plaintiffs are not entitled to recover the counsel fees which they expended in the defense of the action brought to charge the tug with the liability of this collision. The defendant caused to be inserted in the policy a provision that the liability of the tug was to be determined by an action at law if it so elected. That provision in the policy gave it the right to insist that the amount of its liability should be fixed by a judgment in an action brought against the tug. But the condition of the policy, which is one framed by the defendant, is not to be extended by implication or inference. All that the plaintiff was compelled

to do, to comply with that condition, was to permit himself to be sued, or an action in rem to be brought against his tug, and to await the result of that litigation. When the judgment was entered, that established, not only the liability of the tug, but the liability of the defendant. He did not agree, nor was he asked to agree, to defend any action, and the defendant, not having inserted a provision that he should do so in the policy, cannot now insist upon it. The conclusiveness of a judgment does not depend upon the fact that the suit in which it was obtained has been defended. If jurisdiction has been acquired, the judgment becomes conclusive from that fact. This was all that the defendant had a right to require by its contract, and it, equally with the plaintiff, would be bound by such a judgment. Clearly, if the plaintiff had no defense, he would not be bound to interpose a defense; and that seems to have been the situation here. A useless defense was interposed solely because the defendant insisted that it should be done. It was not necessary to determine the effect or the amount of its liability. The contract was purely one of indemnity. Ordinarily, in such a contract, when an action is brought against the person who is to be indemnified, he may give notice of the pendency of the action to the indemnitor, and, if the indemnitor desires to be defended, he may do so, or he may procure it to be done at his expense by the person who is sued. In either case, he is liable for the expenses of defending the action as a part of the loss which the plaintiff has suffered, and which is covered by the contract; the loss here being covered, not because the tug was liable for these counsel fees, but because the defendant, in an effort to escape or to limit its liability, had procured the plaintiff to incur other expenses than those required by the contract, at its request and for its benefit. Under those circumstances, the defendant is clearly, as it seems to me, liable in this action for the counsel fees.

INGRAHAM, J., concurs.